COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH       

 

NO. 2-09-275-CR

 

 

DAVID
 CLAYTON RATLIFF                                                                APPELLANT

A/K/A CLAYTON DAVID SINGLETON

A/K/A DAVID CLAY RATLIFF

 

V.

 

THE
 STATE OF TEXAS                                                                             
 
 STATE

 

------------

 

FROM THE 43RD
 DISTRICT COURT OF PARKER
COUNTY

 

------------

 

OPINION

 

------------

Appellant
David Clayton Ratliff a/k/a Clayton David Singleton a/k/a David Clay Ratliff appeals
his conviction for possessing less than one gram of methamphetamine.[1]  In three points, he contends that the trial
court erred by denying his motion to suppress evidence that he says the police
obtained illegally and by denying his motion for mistrial based on the State=s
allegedly improper








jury
argument.  We affirm.

Background
Facts

A
Weatherford resident, Kelly Lindner, called the police because she saw a white
car that she did not recognize near her neighbors= residence
while her neighbors were gone, and she believed that Asomething
bad was happening.@ She told the police that people
from the car were removing items from her neighbors= garage
and putting them in the car.  One of the
car=s
passengers was Lindner=s neighbors= daughter,
Rachel Adams, although Lindner did not know that fact at the time she called
the police.  Appellant and Bryan Harko
were the car=s other
occupants.

Weatherford
Police Department Detective Troy Luecke received a dispatch call regarding the
suspicious white car, found it, and saw its three occupants.[2]
According to Detective Luecke, appellant, the front seat passenger, was
confrontational and agitated when Detective Luecke tried to ask him
identification questions.  Because
Detective Luecke smelled marijuana coming from appellant, he asked appellant to
get out of the car, and upon searching appellant, found two marijuana
cigarettes in appellant=s pocket.  Thus, Detective Luecke arrested appellant.[3]

After the
arrest, Detective Luecke searched the parts of the car Athat
[appellant] could reach.@[4]  During the search, Detective Luecke found a
briefcase that contained the following: 
three syringes, a pack of rolling papers, a small clear ziplock bag with
white residue in it, a spoon with a white crystal substance on it (which field
tested positive at the crime scene for methamphetamine), and two papers bearing
appellant=s
name.  Detective Luecke explained that
because Athey were
no longer in sterile packages@ at the
time he found them, the syringes appeared to have been used.

A Parker
County grand jury indicted appellant for possessing less than one gram of
methamphetamine; the indictment contained enhancement paragraphs alleging that
appellant had several previous felony convictions.  Appellant waived arraignment and pled not
guilty.

On the
morning of his trial, appellant filed a motion to suppress the evidence that
Detective Luecke had obtained.  Appellant
contended that the warrantless search was unreasonable under the federal
constitution and the Texas constitution and statutes because, among other
reasons, Detective Luecke did not have authority to search the car incident to
appellant=s arrest
under Arizona v. Gant.[5]  Although the motion stated that a pretrial
hearing outside of the jury=s presence
was necessary, there was no such hearing.  Instead, after voir dire and before the first
witness testified, appellant informed the court that he had filed the motion
and that he would bring it to the court=s
attention at his Afirst time to object during the
[trial].@

During
Detective Luecke=s testimony, he identified and
discussed each item that he had found in the car.  The State then offered the items to the court
for admission, at which point appellant objected under the Texas and federal
constitutions, particularly relying on Gant.  The court overruled the objection and
admitted the evidence.  After the
evidence was admitted, appellant=s counsel
asked Detective Luecke several questions about the contents of the briefcase,
and the State then asked Detective Luecke further questions about the briefcase=s contents
without any objection.[6]  Herman Carrell, who works as a forensic
scientist at the crime lab, testified without objection that he tested the
white substance found by the police and confirmed that it is .05 grams of
methamphetamine.[7]  Later in the trial, after the State recalled
Detective Luecke, appellant again asked him about the particular items that he
had found in the briefcase.  Then, after
the State rested, appellant again moved to suppress the State=s evidence
on the basis of Gant.

After the
parties finished presenting evidence and argument, the jury found appellant
guilty of possessing methamphetamine, and after the trial court heard evidence
regarding his punishment and found some of the enhancement allegations from his
indictment to be true, it assessed a sentence of fifteen years=
confinement.  Appellant filed notice of
this appeal.

Preservation
of Error

In his
first two points, appellant contends that the trial court erred by denying his
motion to suppress and by admitting the evidence that was obtained from the
car.  The titles of his two points (which
include a page number range of the reporter=s record
that his points relate to) and the argument within the points indicate that
appellant complains about the admission of the physical evidence found by
Detective Luecke after appellant=s arrest.  The State contends that appellant has
forfeited his complaints about the admission of the evidence.  We agree with the State.

To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R.
App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim.
App. 1998) (op. on reh=g), cert. denied, 526
U.S. 1070 (1999).  Further, the trial
court must have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal
to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State,
138 S.W.3d 334, 338, 341 (Tex. Crim. App. 2004).  Preservation of error is a systemic
requirement.  Archie v. State, 221
S.W.3d 695, 698 (Tex. Crim. App. 2007).

To
preserve error about the illegal seizure of evidence, a defendant must either
file a motion to suppress and obtain a ruling on the motion or timely object
when the State offers the evidence at trial.  See Tex. R. App. P. 33.1(a); Tex. R. Evid.
103(a)(1); Ross v. State, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984); Stults
v. State, 23 S.W.3d 198, 205 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d) (op. on
reh’g); Thomas v. State, 884 S.W.2d 215, 216 (Tex. App.CEl Paso
1994, pet. ref=d).  If the defendant waits until the State offers
the evidence at trial, the objection to the evidence must be made before a
witness gives substantial testimony about it.  See Marini v. State, 593 S.W.2d 709, 714
(Tex. Crim. App. [Panel Op.] 1980) (explaining that an objection to evidence Amust be
urged at the earliest opportunity@); Stults,
23 S.W.3d at 205B06; Angelo v. State, 977
S.W.2d 169, 177 (Tex. App.CAustin
1998, pet. dism=d w.o.j.) (op. on reh’g); see
also Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App.) (explaining
that Aif a
question clearly calls for an objectionable response, a defendant should make
an objection before the witness responds@), cert.
denied, 516 U.S. 832 (1995).

In Tell
v. State, an aggravated robbery case, the defendant attempted at trial to
suppress the admission of a ski mask that police officers obtained from his
residence without a search warrant or consent. 
908 S.W.2d 535, 538, 543 (Tex. App.CFort Worth
1995, no pet.).  But the defendant
allowed a police officer to answer four questions about seizing the ski mask
before objecting to the evidence.  Id.  On appeal, we concluded that A[b]ecause
Tell failed to object at the time the ski mask was mentioned and allowed
further questions and answers before finally objecting,@ he Awaived any
error in the admission of the ski mask.@  Id. at 544.

Similarly,
in Turner v. State, the defendant contested the trial court=s
admission of evidence that a detective had seized from his vehicle after his
arrest.  642 S.W.2d 216, 216B17 (Tex.
App.CHouston [14th
Dist.] 1982, no pet.).  The court of
appeals held that the defendant forfeited his objections at trial by allowing
the detective to testify “extensively to the arrest and the items found in the
search.@  Id. at 217.  The appellant did not object to the testimony
Abut only
to the five exhibits.@ 
Id.; see also Marini, 593 S.W.2d at 714 (holding that an
objection to the admission of physical evidenceCnarcoticsCwas
forfeited because the appellant had not objected at trial to the officer=s
testimony about finding the narcotics); King v. State, No. 02‑07‑00172‑CR,
2008 WL 3918051, at *3 (Tex. App.CFort Worth
Aug. 26, 2008, pet. ref=d) (mem. op., not designated for
publication) (AWhen a
party objects to the admission of physical drug evidence after a police officer
has already testified about finding the drugs without objection, nothing is
presented for review.@).

As noted
above, appellant filed a motion to suppress evidence but did not obtain a
pretrial hearing or ruling on the motion. 
As the following excerpt of Detective Luecke=s
testimony demonstrates, appellant then allowed Detective Luecke to testify
about the evidence extensively before objecting to the admission of the State=s physical
evidence:

Q.      . . .  Detective Luecke,
you brought with you a box to court today; is that correct?

 

A.      Yes, ma=am.

 

Q.      What is it?

 

A.      The evidence we removed from the vehicle that day.

 

Q.      Okay.   I=m going to show you what I=m going to mark as State=s Exhibit No. 2, which is a
single baggy that has currently been stapled to four other baggies.  So I=m only talking about the baggy that has State=s Exhibit No. 2 on it.  Can you identify the contents of that clear
plastic baggy?

 

A.      It=s two marihuana cigarettes.

 

Q.      And are those the two marihuana cigarettes that you retrieved
from the pants of Mr. Ratliff?

 

A.      Yes.  It has my initials
on the envelope.

 

. . . .

 

Q.      Once Mr. Ratliff was arrested, then what did you do?

 

A.      Basically, you know, I observed a backpack and a briefcase
sitting behind the passenger seat.

 

. . . .

 

Q.      What, if anything, did you locate?

 

A.      Located three syringes that appeared to have been used, a pack
of rolling papers, a small clear ziplock bag containing white residue, a spoon
containing white crystal substance on the spoon, and two different papers that
contained the name of Ratliff.

 

. . . .

 

Q.      . . .  Specifically what
are the contents of State=s Exhibit No. 3?

 

A.      It=s a spoon.  It still has ‑‑ you can still see
some white residue on the spoon.

 

Q.      And what=s the significance of the
white residue?

 

A.      I believed it to be methamphetamines.

 

Q.      Why?

 

A.      Due to the texture and that I=ve seen crystal meth and
methamphetamines during my time as a patrolman, detective, and SWAT, and K‑9.

 

. . . .

 

Q.      Okay.  Finally, I=m going to show you what=s been marked as State=s Exhibit 7.  And if you will identify that for the jury
please.

 

A.      It=s going to be the paperwork
contained in Ratliff=s name that was removed
from the briefcase.

 

. . . .

 

Q.      . . .  And if you=ll take a look at the
contents of that and make sure that those are the items that you retrieved from
the briefcase from the Rendezvous?

 

A.      This is an envelope contained in the name of Clint Ratliff.

 

We
conclude that, as in Tell and Turner, along with the other cases
cited above, appellant=s failure to object at the time
Detective Luecke specifically described the physical evidence and explained how
he found that evidence forfeited any error associated with his objection to the
State=s later
introduction of the evidence.  See
Tex. R. App. P. 33.1; Tell, 908 S.W.2d at 543B44; Turner,
642 S.W.2d at 216B17.  Thus, we overrule appellant=s first
and second points.

Appellant=s Motion
for Mistrial

In his
third point, appellant contends that the trial court erred by denying his
motion for mistrial that he made during the State=s jury
argument, in which the following colloquy occurred:

[THE STATE]: . . .  Now, it=s important for you to know
that you don=t all have to agree on
which reason Officer Luecke had to search the briefcase.  Nine of you can say, AYou know what, I think he
smelled the marihuana and I think there was probable cause.@

 

[DEFENSE COUNSEL]:  Objection. 
They have to agree unanimously on each one of the issues.  This isn=t a selective deal.

 

THE COURT:  Sustained.

 

[THE STATE]:  Three of you can say, AYou know what, I don=t believe that part but I
do believe that consent was given.@  As long
as the total of you that are agreeing is 12, as long as all of you agree that
there was a reason for him to search ‑‑

 

[DEFENSE COUNSEL]:  Objection. 
I just objected to that. It=s a misstatement of the law.  They all have to go down the checklist, and
it has to be unanimous.  If any one of
them has a reasonable doubt, they don=t finish.

 

THE COURT:  I=ll sustain the objection.

 

. . . .

 

[THE STATE]:  Again, what I said is that all of you have to
agree.  Okay?  If three of you agree to one reason and nine
of you agree to another, it doesn=t matter how it=s split.

 

[DEFENSE COUNSEL]:  I=m going to object once again. If they don=t have a unanimous
agreement or if they have a reasonable doubt on one issue, they don=t go further.  Thank you.

 

THE COURT:  Sustained. 
And ladies and gentlemen, you have the Charge with you.  And it explains the situation.

 

. . . .

 

[DEFENSE COUNSEL]:  Because the State had persisted three times
in telling them what the law is not, I=d ask for a mistrial.

 

THE COURT:  That=s denied.

 

When a
trial court sustains an objection and instructs the jury to disregard (as the
trial court did here) but denies a defendant=s motion
for mistrial, we must decide whether the trial court abused its discretion by
denying the mistrial.  Hawkins v.
State, 135 S.W.3d 72, 76B77 (Tex.
Crim. App. 2004).  Only in extreme
circumstances, when the prejudice caused by improper conduct is Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile,@ will a
mistrial be required.  Id. at 77; see also Simpson v. State,
119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert. denied, 542 U.S. 905
(2004).       

In
determining whether a trial court abused its discretion by denying a mistrial,
we balance three factors:  (1) the
severity of the misconduct (prejudicial effect), (2) curative measures, and (3)
the certainty of conviction absent the misconduct.  Hawkins, 135 S.W.3d at 77; Mosley,
983 S.W.2d at 259.  Here, appellant
cannot show that the trial court abused its discretion by denying his motion
for mistrial because he has not demonstrated that misconduct, severe or
otherwise, occurred.

The court
of criminal appeals has Along held that >error in
jury argument does not lie in going beyond the court=s charge,
but in stating law contrary to the same.=  That is, there is no error in correctly
arguing the law, even if the law is not included in the court=s charge.@  State v. Renteria, 977 S.W.2d 606, 608
(Tex. Crim. App. 1998) (citing Mauldin v. State, 628 S.W.2d 793, 795
(Tex. Crim. App. [Panel Op.] 1982)); Corpus v. State, 30 S.W.3d 35, 41B42 (Tex.
App.CHouston
[14th Dist.] 2000, pet. ref=d)
(holding that there was no error when the State argued that two people could
jointly possess an object, which was a correct statement of the law, even when
the law of joint possession was not included in the jury charge); Gillis v.
State, 694 S.W.2d 245, 251 (Tex. App.CFort Worth
1985, pet. ref=d) (holding
similarly).  Therefore, if the State=s jury
argument correctly stated the law and was not inconsistent with the trial court=s charge,
then it was not improper.

Article
38.23 of the code of criminal procedure states that if the jury has a
reasonable doubt that evidence has been obtained in violation of the law, it
shall disregard the evidence.  Tex. Code
Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). 
Appellant asserts, A[T]he jury
was told by the Prosecutor that not all 12 [jurors] had to agree on probable
cause, an issue submitted to them[.] 
That argument of the Prosecutor was contrary to the requirements set
forth in the Court=s Charge on that issue.@  However, the jury charge did not explicitly
inform the jury that each juror had to agree on the particular factual basis
for Detective Luecke=s search.  Rather, the charge instructed the jury that
the search could be supported by either Harko=s consent
or a Adetectable
odor of marihuana that Officer Luecke was able to smell,@ and then
later the charge told the jury generally that its Averdict
must be unanimous.@ 
The State told the jury that they were required to all agree that
Detective Luecke had some basis for the search although jurors could disagree as
to which basis supported the search.  We
conclude that this argument, although supplementary to the charge, was not
inconsistent with its explicit language.

As to
whether the argument made by the State at trial is contrary to the law,
appellant has not cited any authority to show that jurors must be unanimous on
the particular facts (between those that could show consent or probable cause)
that validate a search, and we have not found any authority that directly
addresses the issue.  Surely, a jury=s verdict
in a criminal case must be unanimous. 
Tex. Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp. 2009); Ngo v.
State, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); see Landrian v. State,
268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (explaining that Athe jury must
be unanimous in finding that the defendant committed a specific statutory crime@).  However, Adifferent
jurors may be persuaded by different pieces of evidence, even when they agree
upon the bottom line.  Plainly, there is
no general requirement that the jury reach agreement on the preliminary factual
issues which underlie the verdict.@  Davis v. State, 268 S.W.3d 683, 711
(Tex. App.CFort Worth
2008, pet. ref=d); see
Valdez v. State, 218 S.W.3d 82, 84B85 (Tex.
Crim. App. 2007) (holding that a jury was not required to unanimously decide
which two of several alleged prior felony convictions supported the enhancement
of the appellant=s punishment because the penal
code=s
enhancement provision states only that the State is required to prove Atwo felony
offenses@). 

For
example, in a felony murder case, a jury is not required to unanimously concur
regarding which specific felony the defendant committed or attempted to commit
in conjunction with the murder.  White
v. State, 208 S.W.3d 467, 469 (Tex. Crim. App. 2006).  Similarly, a jury is not required to
unanimously agree on the statutory method of intoxication (between having a
blood alcohol concentration of .08 or more or not having normal use of
faculties) in a driving while intoxicated case as long as the jury unanimously
decides that the defendant was intoxicated.  Price v. State, 59 S.W.3d 297, 301B03 (Tex.
App.CFort Worth
2001, pet. ref=d).

A[T]he
question of what a jury must be unanimous about . . . is determined by the
legislative intent of the applicable statute.@  Valdez, 218 S.W.3d at 84.  AIn divining
legislative intent, we look first to the language of the statute.  When the meaning is plain, we look no
further.@  Lomax v. State, 233 S.W.3d 302, 308
(Tex. Crim. App. 2007) (quoting Rodriguez v. State, 953 S.W.2d 342, 353
(Tex. App.CAustin
1997, pet. ref=d)).  While article 38.23 allows the jury to resolve
factual disputes related to whether evidence was obtained legally or illegally,
the article does not express that the jury must unanimously decide why
the evidence was obtained legally or illegally. 
See Tex. Code Crim. Proc. Ann. art. 38.23(a); see also
Newsom v. State, No. 10‑07‑00169‑CR, 2009 WL 1163403, at
*6B7 (Tex.
App.CWaco Apr.
22, 2009, pet. ref=d) (mem. op, not designated for
publication) (holding that a jury charge was not erroneous although it
permitted a jury to find that a traffic stop was justified without requiring
the jury to agree about which of three alleged traffic violations was the basis
for the stop).  Thus, we hold that the
jury was not required to agree about the factual justification to support the
legality of Detective Luecke=s search
as long as all jurors agreed that the evidence was not obtained illegally.

For these
reasons, we conclude that the trial court did not abuse its discretion by
denying appellant=s motion for mistrial because the
State=s jury
argument was not improper.  We overrule
appellant=s third
point.




 

Conclusion

 

Having
overruled all three of appellant=s points,
we affirm the trial court=s judgment.  

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  July 15, 2010











[1]See Tex. Health & Safety
Code Ann. '' 481.102(6), .115(b)
(Vernon 2010).





          [2]The
car=s
driver, Harko, knew appellant because appellant had given him tattoos.  Harko said that appellant had called him to
pick appellant up from a motel and give appellant a ride to Weatherford in
exchange for A[f]orty dollars and some dope.@





[3]Another officer who was at
the scene said that he did not smell marijuana coming from appellant, and Harko
said the same.





[4]Harko said that although he
had his own drug paraphernalia in the car, he gave police consent to search it.





[5]129 S. Ct. 1710, 1723B24 (2009). 





[6]State=s Exhibit No. 8, a document
that Detective Luecke generated and that was titled AWeatherford Police
Department Property Receipt,@ listed appellant as the
defendant and described that officers had found ADavid Ratliff=s@ briefcase, a white crystal
substance, rolling papers, syringes, a silver spoon with methamphetamine
residue, and papers containing appellant=s name.  This
exhibit was admitted without a constitutionally based objection by appellant.





[7]Appellant objected on
constitutional grounds to the admission of Carrell=s report that showed the
result of his test but not to Carrell=s testimony regarding the test.